## Olson, Appellant, *v.* McLaughlin.

*Trespass—Unlawful cutting of timber—Treble damages—Title—Possession—Evidence—Act of March 29, 1824, P. L. 152—Ratification of tort.*

Where a husband and wife, tenants by entireties, bring an action of trespass quare clausum fregit to recover treble damages for the unlawful cutting of trees as provided by the Act of March 29, 1824, P. L. 152, they may establish their ownership and possession of the land on which the timber was cut, by showing a deed to themselves made about ten-years prior to the injury complained of, coupled with some evidence as to the history of title for twenty-five or thirty years; that the property from which the timber had been cut was originally a part of a piece of land that was cultivated; that plaintiffs had on several occasions cut timber, and had paid the taxes on the property from the time they bought it; and that the lines of the land were well defined by a survey from those of the defendant's property.

An action may be brought to recover treble damages for the unlawful cutting of timber on the plaintiff's land, although it appears that the actual cutting had been done by an independent contractor of the defendant's without the latter's knowledge or direction, if it also appears that after the cutting had been done, the defendants learned of it, and notwithstanding this knowledge, removed it to their mill and converted it to their own use.

An action of trespass quare clausum fregit under the Act of March 24, 1824, P. L. 152, to recover treble damages for the unlawful cutting of timber is broad enough to include a common law action; and if the plaintiffs in such an action fail to establish their case for treble damages, they may, if the facts warrant, recover single damages for compensation.

The Act of March 29, 1824, P. L. 152, creates two offenses (1) cutting down and felling timber, and (2) conversion to the offender's own use. Both may be joined in an action of trespass, and treble damages may be recovered for the conversion, although the actual cutting may have been done by another person.

Argued May 1, 1916. Appeal, No. 144, April T., 1916, by plaintiffs, from judgment of C. P. Clarion Co., Aug. T., 1912, No. 217, on verdict for defendants in case of J. B. Olson and Maggie Olson v. J. M. McLaughlin, et al.,

doing business as J. M. McLaughlin & Company. Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Trespass to recover treble damages for the unlawful cutting of timber. Before CRISWELL, P. J., specially presiding.

At the trial it appeared that the plaintiffs, J. B. Olson and Maggie Olson, his wife, became the owners in fee as tenants by entireties of a tract of 11 acres in Beaver Township, Clarion County, Pennsylvania, by deed dated January 23, 1902, and duly recorded. This tract never had any buildings or improvements thereon and was unseated land, and the taxes were always paid by them since they purchased same. J. B. Olson cut timber therefrom shortly after the purchase in 1902, several years previous to 1911, and also in June or July, 1911. In 1904 J. B. Olson, without his wife's knowledge or consent, sold all the big timber by oral agreement to William Brenneman and Edward Bell, giving them two years in which to remove the same. This not having been done, Olson extended by oral agreement the time to one year longer, but no timber of any kind was cut or removed by Brenneman. Olson claims that the contract was forfeited.

In March, 1911, one Dreihaupt, an independent contractor under the defendants, without the latter's knowledge or direction cut the timber on the plaintiff's land. The defendants subsequently learned of this, but notwithstanding, removed the timber to their mill and converted it to their own use.

The court gave binding instructions for the defendants on the ground that the cutting was done by an independent contractor.

Verdict and judgment for defendant. Plaintiffs appealed.

*Error assigned* was in giving binding instructions for defendants.

Arguments.     [64 Pa. Superior Ct.

*A. A. Geary,* of *Geary & Hindman,* with him *Brush & Wilson,* for appellant.—The plaintiffs had sufficient title to sustain the action: Tammany v. Whittaker, 4 Watts 221; Walton v. Pollock, 2 D. R. 607; Dyer v. Walker & Howard, 40 Pa. 157; Smith v. Loafman, 145 Pa. 628; Share v. Anderson, 7 S. & R. 42; Wilkinson v. Connell, 158 Pa. 126; Irwin v. Patchen, 164 Pa. 51.

The defendants are liable in treble damages: Mondorff v. Wickersham, 63 Pa. 87; Wheeler, Etc., Mfg. Co. v. Aughey, 144 Pa. 398; Penn Nat. Gas Co. v. Cook, 123 Pa. 170; Fenn v. Dickey, 178 Pa. 258.

Ratification will be presumed from the acceptance of benefits of an unauthorized act: Kramer v. Dinsmore, 152 Pa. 264; Wright v. Burbank, 64 Pa. 247; McCloskey v. Powell, 138 Pa. 383; Wagner v. Peterson, 83 Pa. 238.

The original contractor is liable where he retains even partial control of the work: Allen v. Willard, 57 Pa. 374.

The object of this Act of March 29, 1824, was to prevent the wilful or careless cutting of another's timber. The person cutting timber either by himself or through his agent is bound to know it is on his own land or that he had the owner's permit to cut the same: Watson v. Rynd, 76 Pa. 59; Kramer v. Goodlander, 98 Pa. 353; McCloskey v. Powell, 123 Pa. 62; McCloskey v. Powell, 138 Pa. 383; Hobensack v. Phipps, 56 Pa. Superior Ct. 180.

*F. J. Maffett,* with him *H. M. Rimer,* for appellees.— The evidence was insufficient to support plaintiff's title and possession: Greber v. Kleckner, 2 Pa. 289; Bigler v. Antes, 21 Pa. 288; Riefner v. Bowman, 53 Pa. 313; Hess v. Sutton, 33 Pa. Superior Ct. 530; Fairchild v. Dunbar Furnace Co., 128 Pa. 485; Tammany v. Whittaker, 4 Watts 221.

The cutting was done by an independent contractor: Whitney v. Backus, 149 Pa. 29; Hobensack v. Phipps, 56 Pa. Superior Ct. 180.

OPINION BY KEPHART, J., July 18, 1916:

This is an action of trespass for the unlawful cutting of timber trees. It is broad enough to include the common law action. The common law action of trespass is to redress the injury done by an award of compensation or the value of the timber; the specification under the statute for treble damages is to recover the penalty prescribed by the statute, and intended to' reach those who negligently or wilfully intrude upon the lands of others. Both may be joined in one form of action, though but one recovery can be had if so brought: Hughes, et al., v. Stevens, 36 Pa. 320; Fairchild v. Dunbar Furnace Co., 128 Pa. 485. This action is trespass quare clausum fregit, in which the plaintiffs declared·under the statute for treble the value of the trees as their measure of damages. The trespass complained of is the entry on lands belonging to the plaintiffs and the cutting and removal of the timber trees without their consent. In such action, if the plaintiffs should fail to establish their case for treble damages, they could, if the facts warranted, recover single damages as compensation: McCloskey v. Powell, 138 Pa. 383.

It is admitted defendants cut over the line. The lines were marked to set off this tract. The quantity cut and its value have been established by credible evidence. The third section of the Act of March 29, 1824, reads as follows: "In all cases where any person ......shall cut down or fell, or employ any person or persons to cut down or fell, any timber tree or trees, growing upon the lands of another, without the consent of the owner thereof, he, she, or they so offending shall be liable to pay to such owner double the value of such tree or trees so cut down or felled; or, in case of the conversion thereof to the use of such offender or offenders, treble. the value thereof, to be recovered, with costs of suit, by action of trespass or trover, as the case may be." Two separate offenses are created: cutting down and felling timber, and conversion to the offender's own use.

Both may be joined in an action of trespass and treble damages not only for the cutting but for the conversion of the timber may be recovered: Welsh v. Anthony, 16 Pa. 254. If the plaintiffs were able to show that the defendants unlawfully cut down timber on the land, or knowingly converted it to their own use, the defendants would be liable. The evidence shows that the timber was cut by Dreihaupt, an independent contractor, without the knowledge or consent of the defendants, and the contractor was not under defendants' control of supervision in the manner or method of doing the work. The contract was let for a specific piece of land, which did not cover the defendants' property. The defendants were not liable under the first part of Section 3 of the act, unless the contractor's acts were ratified by the defendants. For his acts, ratified or adopted, the defendants would be liable. A tort may be ratified or the benefit coming from the tort may be adopted, and liability attach by reason thereof: Jaggard on Torts, Vol. I, page 43-46; 31 Cyc. 1249. In applying the principle of ratification, the person to be affected must have had knowledge that the tort had been committed; but with such knowledge and such contractual relationship between them and the person committing the act, the conversion by the defendants of the timber will be an adoption or ratification of the tort and will cause them to be liable as a principal therefor. The defendants would be principals not because they cut or authorized the cutting of the trees, but because they ratified and adopted an act done for their benefit by converting the timber cut. They would unquestionably be liable under the common law action, and also under the statute: McCloskey v. Powell, 123 Pa. 62. "Thus, not only accessories before the fact, but accessories after the fact, who are benefited by or in whose interest the act has been done, are liable as principals": McCloskey v. Powell, 138 Pa. 383. It is not necessary to prove by direct evidence that the defendants were seen in the act of cutting the timber, but if the jury

should find from all the evidence that they authorized or ratified the trespass complained of, then that would make them legally liable to the same extent as if they had individually committed the alleged trespass: Whitney, et al., v. Backus, 149 Pa. 29. A municipal corporation may ratify the unauthorized tort of one of its officials by accepting the benefit or adopting the acts: Fox v. The Northern Liberties, 3 W. & S. 103. Many other illustrations of ratification of a tort may be given. The defendants knew through Mr. Brenneman that their contractor had cut over the line and that the logs had been taken from this tract of land to their mill, converted and not paid for. These acts show knowledge, adoption and ratification. The defendants excuse their acts by relying on a sale of this timber from Brenneman, who they claim bought it from J. B. Olson, one of the plaintiffs. No writing is exhibited evidencing such sale, and the plaintiffs deny that Brenneman had any title to the property. J. B. Olson admits that six or eight years before he made a sale of the larger timber to be taken off in two years, but claims the contract was forfeited. They advance the additional claim that the tract was owned by the plaintiffs as tenants by entireties and the sale was not good without the wife's joinder: Beihl v. Martin, 236 Pa. 519. If Brenneman was not the owner, the sale to defendants certainly would not relieve them of the consequences of their appropriation of the timber nor of its effect as ratifying the unlawful act of the cutter.

The position that penal statutes must be construed strictly and should not apply except to those directly concerned, must be considered in the light of the facts. It is not a strict construction of the Act of 1824 to hold as a principal one who by contract engages a jobber to cut the timber trees of a certain tract without pointing out the lines of the tract and is notified that his jobber has cut over the line and with such knowledge takes away and converts the timber unlawfully cut. That he acquired the right from a person who had no title would

not protect him from the penalty of the Act of 1824 : Mc-Closkey v. Powell, 138 Pa. 383. Timber standing is real estate. The records are open for his inspection. If the plaintiffs sold the timber, the defendants would not be liable in this action. If they had done some act, which might have given color to a sale to such an extent that Brenneman was warranted in believing he had the title, while it would not relieve the defendants from the trespass because of such title not being in Brenneman, it would relieve them from the penalty of treble damages. They would still be liable under the common law action. These questions were for the jury and could not be determined by the court as a matter of law. The error of the court below was in not giving to the acts of the defendants their legal effect when with knowledge they took away and used the timber.

Concerning the sufficiency of the evidence of title, there would not be much question if this were an ordinary action of trespass. All that would have been necessary to show would have been that the plaintiffs were in possession of the property, but when the statutory measure of damages is claimed under the Act of 1824, not only must the possession be shown but that the party in possession claims under a color of title. The defendants object to the plaintiffs' evidence of title because it consisted of but one deed of conveyance made about ten years prior to the injury complained of. At the close of the testimony it appeared that there had been given in evidence a history of the title for some twenty-five or thirty years; that the property from which the timber was cut was originally a part of a piece of land that was cultivated. The plaintiffs had on several occasions cut timber and had paid the taxes on the property from the time they had purchased it. The identification of the property with the lines contained in their deed was well established by a survey made from that deed and the lines of the property in reference to defendants' property was marked. There is no doubt that this is prima

facie evidence of ownership and possession.    There was no claim of adverse possession and no claim that any other person owned the fee.    In Keizer v. Beemer, 9 Sadler 575, it was held that the introduction in evidence of a deed of conveyance from an executor, with ratifying deeds from the heirs, was sufficient evidence of ownership to enable the plaintiff to maintain an action of trespass for treble damages.    See Grier v. Sampson, 27 Pa. 183.

The judgment is reversed and a venire facias de novo is awarded.